**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

BRENDA LEE CAMERON,             )
                                )
                Plaintiff,      )
                                )
        v.                      )       1:12CV1352
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
                Defendant.      )


**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Brenda Lee Cameron, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.)  The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 10, 16).  For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on December 24, 2008 (protective filing date), alleging a disability onset date of September 2, 2008.  (Tr. 173-79.)[1]  Upon denial of that application

---

[1] Plaintiff included a claim for Supplemental Security Income ("SSI") on her application for benefits (see Tr. 173); however, the record does not reflect any further pursuit of SSI.

initially (Tr. 85, 87-92) and on reconsideration (Tr. 86, 96-103), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 104-05). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 61-84.) By decision dated August 13, 2010, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 32-43.) On August 31, 2012, the Appeals Council denied Plaintiff's request for review (Tr. 5-10), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2012.

2.   [Plaintiff] has not engaged in substantial gainful activity since September 2, 2008, the alleged onset date.

.  .  .  .

3.   [Plaintiff] has the following severe impairments: status post right knee arthroplasty, asthma, obesity, and chronic back pain.

.  .  .  .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

.  .  .  .

5.   .  .  .  [Plaintiff] has the residual functional capacity to perform less than the full range of light work . . . with postural and environmental limitations.

.  .  .  .

6.    [Plaintiff] is capable of performing past relevant work as an accounts receivable clerk, accounting clerk, and supervisor accounting clerk.   This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity . . . .

. . . [In addition,] there are other jobs existing in the national economy that [Plaintiff] is also able to perform.

. . . .

7.   [Plaintiff] has not been under a disability, as defined in the [] Act, from September 2, 2008, through the date of this decision.

(Tr. 37-42) (internal parenthetical citations omitted).)[2]

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."   Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).   However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).   Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial

---

[2]  The postural and environmental limitations included in the residual functional capacity adopted by the ALJ consisted of "the opportunity to alternate sitting and standing every 30 to 45 minutes," no climbing of ropes, ladders, or scaffolds, occasional climbing of ramps and stairs, occasional crouching, crawling, and kneeling, and no "concentrated exposure to pulmonary irritants such as dust, fumes, or gases, as well as poor ventilation, heat and humidity."  (Tr. 38.)

evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not

disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule"

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) Plaintiff submitted new evidence to the Appeals Council in the form of x-rays of her lumbar spine which warrants remand of her

---

(internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

case for further consideration of her credibility with regard to her back pain (Docket Entry 11 at 2-4);

(2) the ALJ erred by including within the RFC a finding that Plaintiff can occasionally crawl and kneel and by discounting Plaintiff's symptom reporting in formulating the RFC (id. at 4-7); and

(3) substantial evidence did not support the ALJ's finding that Plaintiff could perform her past relevant work ("PRW") and the ALJ's alternative finding that Plaintiff could perform other work identified by the VE because the VE did not explain the conflict between her testimony and the Dictionary of Occupational Titles ("DOT") (id. at 7-8).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 17 at 3-16.)

## 1. New Evidence

In her first assignment of error, Plaintiff contends that new evidence submitted to the Appeals Council warrants remand of her case for reconsideration of her credibility with respect to her back pain. (Docket Entry 11 at 2-4.) Specifically, Plaintiff asserts that new x-rays of her lumbar spine dated February 21, 2012 (Tr. 631), when compared with earlier images taken on March 26, 2008 (Tr. 313, 490, 629), "show[] that, objectively, [her] lumbar spine is in a much worse condition than it was in 2008" (Docket Entry 11 at 3). According to Plaintiff, the ALJ made a favorable

finding at part one of the credibility analysis (meaning that objective evidence showed Plaintiff had a medical condition reasonably likely to cause the pain alleged) on the basis of "virtually" only the March 26, 2008 x-rays, but then found against her at part two of the credibility assessment. (Id. at 2; see also Tr. 40.) Thus, as a result of this "highly material" new evidence, Plaintiff maintains that the ALJ must reassess Plaintiff's credibility with regard to her testimony about her back pain. (Id. at 3.) That argument provides no basis for relief.

"[T]he Appeals Council is required to consider new and material evidence relating to the period on or before the date of the ALJ decision in deciding whether to grant review." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991) (emphasis added). "Evidence is new within the meaning of [the Commissioner's regulations] if it is not duplicative or cumulative." Id. at 95-96; see generally Associate Comm'r of Hearings and Appeals, Soc. Sec. Admin., Pub. No. 70-074, Hearings, Appeals, Litig., and Law (LEX) Manual, § I-3-306(A) (1990). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)).

Here, the x-ray report in question qualifies as "new," as it reveals mild degenerative changes in Plaintiff's lumbar spine not seen on the March 26, 2008 x-ray report (compare Tr. 631, with Tr.

313, 490, 629) or elsewhere in the record. However, the report lacks materiality because it presents no reasonable possibility of a different outcome. Despite Plaintiff's characterization of the new evidence as depicting her back condition as "much worse" (Docket Entry 11 at 3), that evidence, while newly confirming degeneration in Plaintiff's <u>lumbar</u> spine, continues to show only <u>mild</u> degenerative changes (Tr. 313, 490, 629), consistent with the ALJ's findings that Plaintiff's chronic back pain qualifies as a severe impairment (at step two), does not meet a listing (at step three), and merits restriction to less than the full range of light work with significant postural limitations (for purposes of the RFC used at steps four and five). Plaintiff makes no attempt to show how the new findings of <u>mild</u> degenerative changes in her <u>lumbar</u> spine reasonably could alter those determinations. (<u>See</u> Docket Entry 11 at 2-4.) Notably, Plaintiff neither argues that the findings on the February 21, 2012 x-ray report establish that she meets or medically equals any of the Commissioner's listings nor explains how those findings should alter the RFC (let alone how such alteration would impact her ability to perform her PRW or other jobs cited by the VE). (<u>Id.</u>)

Accordingly, Plaintiff's new evidence provides no basis for this Court to order further administrative proceedings.

2.    **RFC**

Next, Plaintiff asserts that substantial evidence fails to support the RFC assessment in two respects. (Docket Entry 11 at 4-7.)    First, Plaintiff characterizes the ALJ's conclusion that Plaintiff can occasionally crawl and kneel (i.e., for up to two hours and 40 minutes of an eight-hour work day) as "inconceivable" in light of her total knee replacement and continued knee pain. (Id. at 4.)    According to Plaintiff, "[t]he ALJ cited no evidence other than check-box documents prepared by State agency non-examiners to support" her conclusion regarding Plaintiff's ability to crawl and kneel. (Id. at 5.)    Second, Plaintiff claims that the ALJ erroneously found that Plaintiff's "own description of her activities and lifestyle were inconsistent with disability." (Id. at 6.)    Plaintiff asserts that "[t]he ALJ overstated the force of the evidence" supporting her conclusion and "understated those parts of [Plaintiff's] testimony that support [Plaintiff's] claim [for benefits]. (Id.)    Those arguments lack merit.

With regard to the ALJ's finding that Plaintiff could occasionally crawl and kneel, the Court should conclude that substantial evidence supports that finding.    Contrary to Plaintiff's argument, the ALJ relied upon medical evidence, Plaintiff's daily activities, and the opinions of the state agency consultants in concluding that Plaintiff could occasionally crawl and kneel. (Tr. 39-41.)    Significantly, the medical evidence

demonstrates that, with the exception of a superficial wound infection, Plaintiff recovered well from her total knee replacement (Tr. 354-76), and ultimately presented to her treating surgeon, Dr. William T. Hardaker, Jr., five months post-surgery, with "[a]bsolutely no complaints," whereupon he discharged her from his care (Tr. 509). Moreover, no medical provider of record has offered an opinion that Plaintiff lacks the ability to crawl and kneel occasionally. Under these circumstances, substantial evidence supports the ALJ's conclusion that Plaintiff can crawl and kneel occasionally.

Even if the Court found substantial evidence failed to support the ALJ's finding regarding crawling and kneeling, only harmless error would result. The ALJ found that Plaintiff retained the RFC to perform her PRW as a receiving clerk, accounting clerk, and supervisor accounting clerk (Tr. 41), and none of these jobs require <u>any</u> crawling or kneeling, either as Plaintiff actually performed them (<u>see</u> Tr. 210) or as generally performed (<u>see</u> Dep't of Labor, <u>DOT</u>, No. 216.482-010, 1991 WL 671933 ("accounting clerk"), No. 216.132-010, 1991 WL 671911 ("supervisor, accounting clerks") (4th ed. 1991)). Similarly, the ALJ made an alternative step five finding that other jobs existed that Plaintiff could perform (Tr. 41-42), and none of those jobs require crawling or kneeling, <u>see</u> <u>DOT</u>, No. 239.567-010, 1991 WL 672232 ("office helper"), No. 219.362-010, 1991 WL 671953 ("administrative clerk"),

No. 209.687-026, 1991 WL 671813 ("mail clerk"). Plaintiff has
failed to dispute that her PRW and the jobs cited by the VE require
no crawling or kneeling (see Docket Entry 11 at 4-7) and, thus,
even if the ALJ erred by finding Plaintiff could occasionally crawl
and kneel, the Court should take no action because such error had
no impact on the outcome of the case, see Fisher v. Bowen, 869 F.2d
1055, 1057 (7th Cir. 1989) ("No principle of administrative law or
common sense requires us to remand a [Social Security] case in
quest of a perfect opinion [from an ALJ] unless there is reason to
believe that the remand might lead to a different result.").

With regard to Plaintiff's credibility, the Court should
similarly find that substantial evidence supports the ALJ's
assessment of Plaintiff's subjective complaints. The Social
Security Administration's Policy Interpretation Ruling Titles II
and XVI: Evaluation of Symptoms in Disability Claims: Assessing the
Credibility of an Individual's Statements ("SSR 96-7p"), as applied
by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a
two-part test for evaluating a claimant's statement about symptoms.
"First, there must be objective medical evidence showing 'the
existence of a medical impairment(s) which results from anatomical,
physiological, or psychological abnormalities and which could
reasonably be expected to produce the pain or other symptoms
alleged.'" Id. at 594 (quoting 20 C.F.R. §§ 404.1529(b) &

416.929(b)).  The ALJ ruled in Plaintiff's favor on that issue. (Tr. 40.)

At part two of the process, the ALJ must evaluate the alleged intensity and persistence of the claimant's reported symptoms and the extent of the resulting impact on the claimant's ability to work.  Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 404.1529(c)(1) & 416.929(c)(1)).  In making this evaluation, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

Here, contrary to Plaintiff's assertion (Docket Entry 11 at 6-7), the ALJ specifically discussed Plaintiff's hearing testimony about her knee pain, difficulty standing, and daily activities:

> [Plaintiff] stated that she . . . has intermittent pain and aches in her knee.  For relief, she elevates her leg and takes Tylenol to ease the pain.  She said she obtains some results after approximately one hour.  She contended that she has difficulty sitting and standing due to her back pain. . . . On a typical day, [Plaintiff] gets up in the morning, makes coffee and watches television.  She likes to crochet, knit, needlepoint and sew.  She performs some household chores, cooking, and cleaning with rest breaks.  She also checks electronic mail on the computer.  She uses public transportation to get to the grocery store.  She noted that she uses electric carts in the grocery store.  She is able to drive, but has some difficulty due to her knee condition.

14

(Tr. 39.)  The ALJ's description of Plaintiff's testimony constitutes an accurate summary.  (See Tr. 72-76.)

Then, after discussing the medical evidence of record (Tr. 39-40), the ALJ made the following findings regarding Plaintiff's credibility:

> Ultimately, [Plaintiff's] statements concerning her impairments and their impact on her ability to work do not support a finding of disability, in light of [Plaintiff's] own description of her activities and lifestyle, the degree of medical treatment required, the reports of treating and examining practitioners, and the findings made on examination.  Despite [Plaintiff's] complaints regarding her right knee condition and chronic low back pain, [Plaintiff] reported to her primary care physician that she went on a three mile hike in May 2008. Moreover, on February 3, 2009, post knee surgery, [Plaintiff] walked with a non-antalgic gait and had good range of motion of the right knee.  Additionally, her back condition has not required the use of [an] assistive device, nor surgical intervention.  Further, she has not sought treatment for her back condition with a free clinic, although she receives her asthma medications through a clinic and free samples from her doctor. Turning to [Plaintiff's] asthma condition, in spite of exacerbations brought on by colds or sinus infections, she has not required any inpatient hospitalization or emergency room visits for her asthma conditions.  In effect, her asthma is well controlled with medication and easily brought to baseline with minimal treatment. Finally, although [Plaintiff] is obese, this condition has not significantly limited her activities of daily living.  In fact, [Plaintiff] requested notes to be excused from work, because her husband needed her at home. [Plaintiff] testified that she is able to perform household chores.  She also stated that she does crafts, including sewing and needlepoint, as well [as] utilizes the computer to check electronic mail.  Thus, the evidence of record tends to show that [Plaintiff's] symptoms and impairments are not as severe as alleged. Moreover, [Plaintiff's] activities are inconsistent with the presence of greater limitations than were found in the aforementioned residual functional capacity assessment.

15

(Tr. 40-41 (internal citations omitted).)  Again, the ALJ accurately
summarized the applicable medical evidence (Tr. 240-72, 354-76, 509)
and  testimony  (Tr.  74-75),  and  her  analysis  comports  with  the
regulatory requirements.

Accordingly,  the  Court  should  reject  Plaintiff's  second
assignment of error.

**3.    Conflict Between VE Testimony and the <u>DOT</u>**

Finally, Plaintiff contends that substantial evidence fails to
support the ALJ's finding that Plaintiff could perform her PRW and
alternative finding that Plaintiff could perform other jobs cited
by  the  VE.    (Docket  Entry  11  at  7-8.)    Specifically,  Plaintiff
maintains  that  the  <u>DOT</u>  "does  not  affirmatively  allow  a  sit/stand
option, and because of this alone, there is a conflict" between the
VE's testimony citing jobs that accommodate a sit/stand option and
the <u>DOT</u>.  (<u>Id.</u> at 7 (citing <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153-
54 (9th Cir. 2007); <u>Jefferson v. Astrue</u>, No. 2:11-cv-840-TFM, 2012
WL 4378584, at *7 (M.D. Ala. Sept. 25, 2012) (unpublished); <u>Martinez
v. Astrue</u>, No. 2:10-cv-857-SA, 2011 WL 2912817, at *8 (D. Utah July
18, 2011) (unpublished); <u>Pangle v. Astrue</u>, No. 1:08cv01760 DLB, 2010
WL  668912,  at  *11  (E.D.  Cal.  Feb.  23,  2010)  (unpublished)).)
Further, Plaintiff argues that jobs at the light exertional level
"'entail standing for up to six hours a day in an upright position
without moving about and would not allow for a sit/stand option,'"
again, requiring "explanatory VE testimony."  (<u>Id.</u> (citing <u>Chism v.</u>

16

<u>Astrue</u>, No. 2:11cv380-CSC, 2012 WL 2930757, at *5 (M.D. Ala. July 18, 2012) (unpublished); <u>Strain v. Astrue</u>, No. 2:09-CV-320-FtM-UA-DNF, 2009 WL 2207509, at *9 (M.D. Fla. July 14, 2009) (unpublished); <u>Raque v. Astrue</u>, No. 07-0419-CV-W-DW-SSA, 2008 WL 1990801, at *1 (W.D. Mo. May 1, 2008) (unpublished)).) Those arguments fall short.

At the outset, the <u>Jefferson</u> and <u>Martinez</u> cases relied upon by Plaintiff do not stand for the proposition that, because the <u>DOT</u> omits reference to sit/stand options, a <u>per se</u> conflict exists when an ALJ relies on VE testimony citing jobs located in the <u>DOT</u> in response to a hypothetical question containing a sit/stand option. <u>Jefferson</u>, 2012 WL 4378584, at *7; <u>Martinez</u>, 2011 WL 2912817, at *8. Instead, those cases merely noted testimony by VEs that, although the <u>DOT</u> job descriptions did not reference a sit/stand option, their vocational experience provided the basis for their testimony regarding its availability. <u>Id.</u> Neither case even addressed the issue of whether the silence of the <u>DOT</u> as to a sit/stand option creates a conflict with VE testimony citing jobs in the <u>DOT</u>, let alone whether reversible error automatically results if the ALJ does not expressly elicit explanatory VE testimony. <u>Id.</u>

The <u>Massachi</u> and <u>Pangle</u> cases do hold that an ALJ errs by failing to procure a specific explanation from a VE regarding how the cited jobs from the <u>DOT</u> can accommodate a sit/stand option. <u>Massachi</u>, 486 F.3d at 1153-54; <u>Pangle</u>, 2010 WL 668912, at *11.

However, those cases from the Ninth Circuit and a district court therein obviously do not bind this Court; rather, this Court should follow several district court cases within the Fourth Circuit which hold to the contrary, see Green v. Colvin, No. 1:10CV561, 2013 WL 3206114, at *11 (M.D.N.C. June 24, 2013) (unpublished) (Webster, M.J.) (citing Lusk v. Astrue, No. 1:11-cv-00196-MR, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013) (unpublished)), recommendation adopted, slip op., 2013 WL 4811705 (M.D.N.C. Sept. 9, 2013) (Eagles, J.); McFalls v. Astrue, No. 1:10cv063, 2011 WL 6000513, at *6 (W.D.N.C. Nov. 30, 2011) (unpublished).

In particular, Green, Lusk, and McFalls rely on Hynes v. Barnhart, No. 04CV490SM, 2005 WL 1458747, at *5 (D.N.H. June 15, 2005) (unpublished), which offers the following, well-reasoned rationale for the conclusion that the silence of the DOT with regard to sit/stand options does not create a presumption that jobs listed therein preclude a sit/stand option:

> As the Commissioner correctly points out, since the [DOT] does not address the factor of changing position in [the jobs cited by the VE] or any other jobs, there is no conflict between the [DOT] and the [VE's] testimony. Here, the [VE] simply applied his expertise and provided the ALJ with information that was not provided in the [DOT]. Contrary to [the] claimant's assertion, there was no "conflict" between the [VE's] testimony and the data provided by the [DOT]. And, perhaps more importantly, the [VE] unambiguously testified that there was a substantial number of jobs in the national economy that a person with [the] claimant's limitations – including the need to change positions frequently – could perform.

Hynes, 2005 WL 1458747, at *5 (internal quotation marks omitted).

Similarly, here, the ALJ asked the VE, "Do you understand that if you give us an opinion which <u>conflicts</u> with the [<u>DOT</u>] that you need to advise us of the <u>conflict</u> and the basis for your opinion?" to which the VE responded, "Yes." (Tr. 81 (emphasis added).) The VE did not thereafter indicate that any conflict arose between her testimony and the <u>DOT</u>. (<u>See</u> Tr. 81-83.)[7] Consistent with <u>Green</u>, <u>Lusk</u>, <u>McFalls</u>, and <u>Hynes</u>, the ALJ thus properly relied on the VE's testimony regarding the availability of jobs that could accommodate Plaintiff's limitations, including as to the sit/stand option, particularly given that Plaintiff had a full and fair opportunity to cross-examine the VE regarding any possible conflict between her testimony and the <u>DOT</u>, but chose not to do so (Tr. 82-83).

Plaintiff's argument that the prolonged standing required by light work precludes any possibility of a sit/stand option similarly fails. None of the cases cited by Plaintiff support her argument in that regard. <u>See</u> <u>Chism</u>, 2012 WL 2930757, at *6-8 (recognizing that, in the Eleventh Circuit, "a [VE's] testimony trumps the [<u>DOT</u>] to the extent that the two are inconsistent" and that, even if that precedent did not exist, mere classification of jobs as light does <u>not</u> preclude a sit/stand option, given that many light jobs involve

---

[7] Although the ALJ noted in her decision that "[p]ursuant to SSR 00-4p, the [VE's] testimony is <u>consistent</u> with the information contained in the [<u>DOT</u>] with the exception of her testimony regarding an opportunity to alternate sitting or standing" (Tr. 42 (emphasis added)), that statement does not equate to a finding that a <u>conflict</u> existed between the VE's testimony and the <u>DOT</u>. The ALJ merely acknowledged the <u>DOT</u>'s silence with regards to sit/stand options, which differs altogether from finding that the <u>DOT</u> <u>conflicted</u> with the VE's testimony, e.g., that the <u>DOT</u> expressly provided that the jobs cited by the VE could <u>not</u> accommodate a sit/stand option.

prolonged sitting (emphasis added)); <u>Strain</u>, 2009 WL 2207509, at *8-9 (commenting generally that unskilled jobs "ordinarily" do not permit a worker to sit or stand at will but remanding case because, <u>inter alia</u>, ALJ neglected to include sit/stand option in hypothetical question to VE); <u>Raque</u>, 2008 WL 1990801, at *1 (not addressing the suitability of light work for sit/stand options). Nor should the Court otherwise deem light work generally incompatible with a sit/stand option. <u>See, e.g.</u>, <u>Wilcox v., Astrue</u>, 492 F. App'x 674, 679-80 (7th Cir. 2012) (rejecting contention that "ALJ should not have found that [the plaintiff] can engage in light work . . . because that is inconsistent with the acknowledgment that [he] was limited to jobs with a sit/stand option").

In sum, the Court should find that substantial evidence supports the ALJ's finding that Plaintiff could perform her PRW and alternative finding that Plaintiff could perform other jobs in the national economy.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 16)

be granted, and that this action be dismissed with prejudice.


                                   /s/ L. Patrick Auld
                                 **L. Patrick Auld**
                        **United States Magistrate Judge**


February 12, 2015